**XANTECH CORPORATION,
Plaintiff–Appellant,**

v.

**RAMCO INDUSTRIES, INC. and J.
Edward Ramsey, Defendants–
Appellees.**

No. 97–4252.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1998.

Decided Nov. 4, 1998.

See also: 643 N.E.2d 918.

Margot F. Reagan, Sean E. Kenyon (argued), Konopa & Murphy, South Bend, IN, for Plaintiff–Appellant.

James R. Byron (argued), Thorne, Grodnik & Ransel, Elkhart, IN, for Defendant–Appellee Ramco Industries, Inc.

Alan L. Weldy (argued), Yoder, Ainlay, Ulmer & Buckingham, Goshen, IN, Cassidy C. Fritz, Elkhart, IN, for Defendant–Appellee J. Edward Ramsey.

Before COFFEY, FLAUM, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

After an injunction blocking Xantech Corporation's access to an irrevocable standby letter of credit was dissolved, Xantech filed suit against Ramco Industries, Inc., which had obtained the injunction, and Ramco's president, J. Edward Ramsey, asserting claims for wrongful injunction, malicious prosecution, interference with a contractual relationship, and punitive damages. The district court granted summary judgment in favor of the defendants, reasoning principally that Xantech's claims are barred by the principle of res judicata. Xantech appeals, and we reverse in part.

## I.

Early in 1990, Xantech agreed to sell the assets of its lighting division to Ramco's predecessor in interest, Xantech, Inc. (to which we shall refer as Ramco, for convenience). A standby letter of credit issued in favor of Xantech secured a portion of the purchase price. The assets of the lighting division in turn served as collateral securing the letter of credit. The predecessor in interest to the Society National Bank issued the letter of credit. An amended letter of credit was issued in September of 1992.

Late in 1993, Ramsey spoke with Xantech's president, Herb Seymour, and offered to pre-pay the outstanding balance on the purchase provided that Xantech would agree to a reduction in the amount owed. After Seymour agreed to a $45,000 discount, the parties on December 14 signed a written agreement that would bring the transaction to a close. Pursuant to that agreement, Xantech released the security interest it held in some of Ramco's assets.

Shortly thereafter, the deal began to fall apart. Xantech learned that Ramco had sold all of its assets to R.I. Corporation before paying Xantech what it was owed. By late December, Ramco had tendered Xantech a check for the reduced purchase price that the parties had agreed to, but Xantech took the position that Ramco had breached their security agreement by selling its assets and that Xantech consequently was entitled to immediate payment in full of the original, non-discounted purchase price. Eventually, Xantech cashed Ramco's check under a reservation of rights. When Ramco took the position that Xantech had now been paid in full, Seymour attempted to draw an additional $45,000 (the amount by which the purchase price had been reduced) on the letter of credit. Society rebuffed his efforts, however.

On March 15, 1994, Ramco filed suit in the Superior Court of Elkhart County, Indiana, seeking a preliminary injunction barring Society from making payment on the letter of credit. Ramco argued that Xantech's efforts to draw on the letter were fraudulent, in that Xantech already had been paid what it was owed under the revised agreement that the parties had reached in December. The court entered a temporary restraining order that same day, and on March 24 the court entered a preliminary injunction against Society.

Xantech, which Ramco had not named as a party, did not learn of the suit until April, when Society disclosed that the injunction prevented it from honoring Xantech's request to draw on the letter of credit. In May, Xantech intervened in the suit and asked the superior court to vacate the injunction. The court refused that request and ordered that no funds be disbursed to Xantech pending further hearing.

Xantech appealed the adverse ruling on its motion to vacate, and the Indiana appellate court ordered the injunction dissolved. *Xantech Corp. v. Ramco Indus., Inc.*, 643 N.E.2d 918 (Ind.App.1994). The court noted that the fraud Ramco had alleged in support of its request for the injunction related to the 1993 modification of its contract with Xantech, not the issuance of the letter of credit in 1990. Only fraud in the credit transaction itself would support injunctive relief preventing Xantech from drawing on the letter of credit, the court reasoned. *Id.* at 921. Further-

more, Ramco had not established that its remedy at law was inadequate. The harm Ramco faced if Xantech drew upon the letter of credit improperly was solely economic, and it could thus be redressed through an award of damages. *Id.* at 921–22. In accord with the Court of Appeals' mandate, the superior court dissolved the injunction and Society honored the letter of credit by disbursing more than $48,000 to Xantech.

After Xantech prevailed in its appeal, Ramco filed a cross-claim asserting claims for unjust enrichment, indemnification, and bad faith and/or fraud, and prayed for damages equal to the monies Xantech drew on the letter of credit, together with costs and attorney's fees. Xantech filed an answer seeking dismissal or judgment on the pleadings as well as costs and other appropriate relief pursuant to Indiana Code § 34–1–32–1, on the ground that the cross-claim was "frivolous, unreasonable, or groundless in its entirety."[1] Xantech subsequently sought, and the Superior Court granted, summary judgment against Ramco on the cross-claim. Ramco subsequently filed a motion to correct errors asking the court to reconsider. Apparently, the court never ruled on that motion. Instead, in June 1996, five months after it filed the motion, Ramco asked the superior court to dismiss the case. The court granted that request.

Shortly thereafter, Xantech filed suit against Ramco and Ramsey in federal court on claims for wrongful injunction, malicious prosecution, interference with a contractual relationship, and punitive damages. Ramsey counterclaimed, alleging that Xantech had breached its December 1993 agreement to discount the purchase price of the lighting division in return for Ramco's immediate payment of the remaining balance. The defendants subsequently asked the district court to grant summary judgment in their favor on Xantech's claims. Among other things, they argued that res judicata barred Xantech from asserting these claims.

The district court agreed that Ramco was entitled to summary judgment. The evident goal of Xantech's complaint is to recover the costs and fees it incurred as a result of Ramco's action in state court, including the injunction that blocked Xantech's access to the letter of credit. Once Xantech had joined that suit as an intervenor, the district court reasoned, the company could have asserted a claim for these damages in that forum. R. 33, Memorandum & Order at 13.

The court acknowledged that Xantech's claim for wrongful injunction did not accrue until the injunction was held improper. *Id.* at 14. "Unfortunately for Xantech, however, this occurred in the state courts when the injunction was dissolved." *Id.* Consequently, Xantech could and should have moved to recover its fees and costs at that time by "suing on the bond" that Ramco had been required to post. *Id.* at 15. It failed to do so. Nor, the court noted parenthetically, had Xantech attempted to demonstrate that injunctive relief was not warranted on the facts of the case, or that Ramco had acted in bad faith in seeking the injunction—two requirements that the court believed Xantech would have to satisfy in order to recover for wrongful injunction and to obtain damages in excess of the bond amount. *Id.* at 15–16. Accordingly, the court found that any claim for costs arising from the injunction proceedings was barred by the doctrine of res judicata. *Id.* at 16. This included Xantech's claims for wrongful injunction, as well as the claim for punitive damages. *Id.*

The court found the claim for malicious prosecution, founded in part upon Ramco's state-court cross-claim against Xantech, likewise barred. Again, the court acknowledged that this type of claim does not accrue until the underlying action has terminated in the claimant's favor. For that reason, a malicious prosecution claim can be and often is asserted in a separate, subsequent lawsuit. *Id.* at 16–17. "However, the issue before this court is not whether the claim itself can be a separate action, but whether the claim is precluded under the doctrine of res judicata." *Id.* at 17. In the Elkhart suit, Xantech had sought relief under section 34–1–32–1 of the Indiana Code, which authorizes an award of costs, including attorney's fees, to the pre-

---

**1.** Section 34–1–32–1 has been repealed, and its provisions are now found in section 34–52–1–1 of the Indiana Code. For the sake of simplicity, we shall continue to refer to section 34–1–32–1.

vailing party when the court finds that another party pursued a claim or defense that was frivolous, unreasonable, or groundless or litigated the action in bad faith. The state court had declined to award costs to Xantech pursuant to this provision and made no finding that Ramco had pursued a frivolous claim or litigated in bad faith. Having sought and failed to obtain this relief in the state court, the district court reasoned, Xantech could not make a second attempt at relief on the same grounds through the vehicle of a malicious prosecution claim. *Id.* at 18.

Alternatively, the court found this claim defective on its merits. Among other elements, a claim for malicious prosecution requires proof that the defendant lacked probable cause to bring the allegedly malicious action. *Id.* at 18–19. No such proof was forthcoming here. The court noted that Xantech had agreed to accept $45,000 less for Ramco's purchase of the lighting division in exchange for immediate payment of the balance owed. Ramco made that payment, and Xantech had cashed the check. Those circumstances supplied probable cause for Ramco to challenge (via the cross-claim) Xantech's ultimately successful efforts to draw upon the letter of credit. *Id.* at 19. Indeed, the fact that the Elkhart Superior Court had granted Ramco's request for a preliminary injunction to forestall those efforts, and had refused Xantech's request to dissolve that injunction, demonstrated that the issues involved were complex and that Ramco's position was not wholly without merit. *Id.*

Finally, insofar as the malicious prosecution claim concerned Ramco's motion to correct errors, as opposed to the cross-claim, the district court concluded that res judicata barred the claim nonetheless. Any claim for fees or other damages was ripe when Ramco filed that motion, the court reasoned. *Id.* at 19. Yet, Xantech had responded to the motion without alleging that the motion was malicious or requesting its costs. The state court, as we have noted, never addressed the merits of the motion and simply dismissed the action with prejudice on Ramco's motion.

That dismissal was conclusive of the rights of the parties, the district court noted, and barred any subsequent effort by Xantech to seek compensatory relief that it could have sought but chose not to seek from the Superior Court. *Id.* at 20.

For the same reasons it had found the claims against Ramco barred by res judicata, the district court found the claims against Ramsey barred as well:

> Xantech intervened in the state court proceeding, thereby accepting its jurisdiction. The injunction was decided on the merits. Any and all claims pertaining to the injunction, including damages, fees, wrongfulness, and malice should have been brought in the state court. The state court action was between the same parties and their privies. Summary judgment was a decision on the merits. As a result, no costs or fees were awarded. Where no judgment is rendered for costs, the costs are upon the person making them. *McNelis v. Wheeler,* 225 Ind. 148, 73 N.E.2d 339 (1947). Any further claims by Xantech are barred by the doctrine of res judicata.

Memorandum & Order at 21.[2] The court later denied Xantech's motion, pursuant to FED.R.CIV.P. 59(e), to alter or amend the judgment. R. 39.

## II.

 Our review of the district court's summary judgment ruling is, of course, de novo. *E.g., Cianci v. Pettibone Corp.,* 152 F.3d 723, 726 (7th Cir.1998). As the district court recognized, we look to the law of Indiana in this diversity action to determine whether the claims that Xantech makes in this suit are barred on res judicata grounds. *E.g., Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.,* 76 F.3d 128, 130 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 177, 136 L.Ed.2d 117 (1996). Generally speaking, in Indiana, res judicata, or more specifically, claim preclusion, will bar the matter presently at issue if, among other

---

**2.** Having concluded that Xantech's claims were barred as against both Ramco and Ramsey, the district court proceeded to find that Ramsey's counterclaim against Xantech was also barred by res judicata. Memorandum & Order at 21–22. Ramsey has not cross-appealed, so we need not address this aspect of the district court's ruling.

things, that matter was or might have been raised in the state court action. *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 988 F.2d 1480, 1487 (7th Cir. 1993) (*Wabash II*), citing *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir.1986). So we must assess "whether there is a coincidence in the matter at issue in this and the previous litigation." *Wabash II*, 988 F.2d at 1487. However:

> Indiana's formulation for what constitutes a matter at issue is more narrow than our federal rule, under which a single cause of action consists of "'a core of operative facts' which give rise to a remedy," *In re Matter of Energy Cooperative, Inc.*, 814 F.2d 1226, 1230–31 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986)). For purposes of claim preclusion, "[e]very [matter] which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated." *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 460 (Ind.App. 1980) (quoting *Town of Flora v. Indiana Service Corporation*, 222 Ind. 253, 53 N.E.2d 161 (1944)); *see Yellow Cab Co. v. Williams*, 583 N.E.2d 774, 777–79 (Ind. App.1991); *M.R. v. Meltzer*, 487 N.E.2d 836, 841 (Ind.App.1986); *Biggs v. Marsh*, 446 N.E.2d 977, 982 (Ind.App.1983). As we recognized in *Wabash I*, the inquiry under Indiana law is essentially whether the two suits deal with a common transaction or occurrence. 903 F.2d [445] at 456 [ (7th Cir.1990) ].

*Id.* at 1487–88. *See also Leal*, 803 F.2d at 335; *Bojrab v. John Carr Agency*, 597 N.E.2d 376, 378 (Ind.App.1992); *Gorski v. Deering*, 465 N.E.2d 759, 762 (Ind.App.1984), citing *Indiana State Highway Com'n v. Speidel*, 181 Ind.App. 448, 392 N.E.2d 1172, 1175 (1979).

■ Although we recognize a certain logical overlap between Ramco's pursuit of injunctive relief in state court and Xantech's effort in federal court to recover the costs and fees it incurred as a result of that pursuit, the two suits in our view do not concern the same transaction or occurrence. Ramco's state-court action (including its original complaint against Society as well as its later cross-claim against Xantech) arose from its agreement to purchase the assets of Xantech's lighting · division, the subsequent agreement to pay off the balance due under that agreement in exchange for a $45,000 discount on the purchase price, and from Xantech's efforts to recoup that markdown by resorting to the letter of credit after Ramco had already paid off the discounted balance. Xantech's federal complaint is based not on that series of transactions or occurrences, but rather on the abuse of process in which Ramco and its president allegedly engaged when they repaired to state court. The facts underlying the state-court suit are no doubt relevant as background to the federal action, but those facts did not give rise to the damages of which Xantech complains here. The source of Xantech's alleged injuries instead is the state litigation *itself*. In that sense, the two suits are wholly distinct. Consequently, even assuming that Xantech could have asserted within the confines of the state-court action a claim for wrongful injunction or any of the other claims it makes now, claim preclusion did not prevent it from instead choosing to reserve those claims for subsequent and separate litigation. *See, e.g., Laux v. Chopin Land Assocs., Inc.*, 615 N.E.2d 902, 907 (Ind.App. 1993) (where claim of wrongful injunction was not raised before the court that issued the injunction, "liability on the bond [for wrongful injunction] is properly the subject of a separate action"), citing *Schultz v. Keel*, 122 Ind.App. 471, 106 N.E.2d 254, 257 (Ind. App.1952); *Lindsay v. Jenkins*, 574 N.E.2d 324 (Ind.App.1991) (separate suit for abuse of process); *Peffley & Henshaw Wrecker Serv. v. Swalls*, 554 N.E.2d 1169, 1172 (Ind.App. 1990) (noting that separate suit is available for abuse of process); *Qualcomm, Inc. v. Motorola*, 179 F.R.D. 580 (S.D.Cal.1998) (separate suit for abuse of process); *Rocky Mountain Timber Corp. v. Federal Ins. Co.*, 502 F.Supp. 433 (D.Or.1980) (same); *see also Rooding v. Peters*, 92 F.3d 578, 581–82 (7th Cir.1996) (applying Illinois law) (writ of mandamus ordering prisoner's release did not bar subsequent action for malicious prosecu-

tion notwithstanding prior availability of damages in mandamus proceeding); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1056 (2d Cir.1990) (request for compensation for wrongful injunction under FED.R.CIV.P. 65(c) is separate and distinct from merits of underlying controversy and so is not barred by claim preclusion); 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2972, at 454–55 (1995).

■ Our assessment is not affected by the request for costs and fees that Xantech made in state court in response to Ramco's motion to correct errors. First and foremost, the Indiana statute authorizing such an award specifically provides that an award of attorney's fees made under that statute "does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts," so long as the prevailing party does not recover the same fees twice.[3] Thus, at least insofar as Xantech is seeking to recover the attorney's fees it incurred in connection with Ramco's action in state court, the express language of this provision would seem to leave the door open to the claims for wrongful injunction and malicious prosecution that Xantech makes here. *See Peffley & Henshaw Wrecker Serv.*, 554 N.E.2d at 1172.[4] Moreover, section 34–1–32–1(b) permits an award of attorney's fees in order to compensate a prevailing party for claims or defenses that are frivolous, unreasonable, or groundless or for actions which were litigated in bad faith. In that respect, the Indiana statute is comparable, although not identical, to FED.R.CIV.P. 11. *Kahn v. Cundiff*, 533 N.E.2d 164, 169 (Ind.App.),

*aff'd. & adopted*, 543 N.E.2d 627 (Ind.1989). Federal case law indicates that fee requests made under Rule 11 do not pose a res judicata bar to subsequent actions for claims akin to malicious prosecution. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1196–97 (3d Cir.1993), citing, inter alia, *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir.), *cert. denied*, 502 U.S. 861, 112 S.Ct. 180, 116 L.Ed.2d 142 (1991). We see no reason why the Indiana courts would decide differently.

Claim preclusion principles thus posed no bar to Xantech's claims against Ramco and Ramsey.[5] The district court cited two alternative obstacles to the wrongful injunction and malicious prosecution claims, however, which require brief discussion.

■ The district court believed that in the absence of proof that Ramco sought an injunction with malice or lack of probable cause, Xantech's recovery for wrongful injunction would be limited to the amount of the bond ($1,000) that the state court ordered Ramco to post. That is true in most jurisdictions. *E.g., Parker Tampa Two, Inc. v. Somerset Dev. Corp.*, 544 So.2d 1018 (Fla.1989). Indiana, however, follows the minority rule, which permits a party wrongfully enjoined to recover damages in excess of the bond without the need to prove malice or lack of probable cause. *Howard D. Johnson Co. v. Parkside Dev. Corp.*, 169 Ind.App. 379, 348 N.E.2d 656, 663 (Ind.App.1976); *see also National Sanitary Supply Co. v. Wright*, 644 N.E.2d 903, 905 (Ind.App.1994); *Peters v. Davidson, Inc.*, 172 Ind.App. 39, 359 N.E.2d 556, 562 (1977).

The district court also observed that Xantech's claim for malicious prosecution, insofar

---

3. No argument is made that the Indiana statute, when referring to claims for "abuse of process," applies only to claims labeled as such and does not include comparable but distinct claims such as those for wrongful injunction and malicious prosecution. *See, e.g., Broadhurst v. Moenning*, 633 N.E.2d 326, 333 (Ind.App.1994) (noting distinctions between abuse of process and malicious prosecution claims).

4. Given that Xantech recovered no fees in the Indiana action, there is of course no prospect of it recovering the same fees twice by virtue of its federal claims.

5. The district court did not separately address Xantech's claim for tortious interference with a contractual relationship, although it is clear from the face of the district court's orders that it believed all of Xantech's claims to be blocked by claim preclusion. The parties have not separately addressed this claim either. For the reasons we have discussed as to the claims of wrongful injunction and malicious prosecution, we conclude that this claim (as well as the claim for punitive damages) prevails over the defense of claim preclusion.

as it rested upon Ramco's state-court counter-claims, was doomed on its merits in the absence of proof that Ramco had filed those claims without probable cause. For the reasons that we recounted above, the district court reasoned that "[c]learly, Ramco had probable cause to believe Xantech's draw against the letter of credit should be questioned." Memorandum & Order at 19. Xantech has made no effort to demonstrate error in this independent rationale for granting partial summary judgment as to the malicious prosecution claim. We therefore sustain the district court's holding as to that claim, insofar as the claim is based on Ramco's state-court counter-claims.[6]

### III.

For the reasons discussed, we AFFIRM in part and REVERSE in part and REMAND for further proceedings consistent with this opinion. Xantech shall recover its costs of appeal.

---

6. The claim survives to the extent it is founded upon Ramco's state-court motion to correct errors.