# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1992

GILBERT JARRARD,

*Plaintiff-Appellant,*

v.

CDI TELECOMMUNICATIONS, INC.
and CRAWFORD & COMPANY,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 03 C 65—**Philip P. Simon**, *Judge.*

_____

ARGUED OCTOBER 28, 2004—DECIDED MAY 25, 2005

_____

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Gilbert Jarrard filed a diversity
suit in district court, alleging wrongdoing by his former
employer, CDI Telecommunications, Inc. ("CDI"), and its
third-party worker's compensation claims administrator,
Crawford & Company ("Crawford"). The district court dis-
missed Jarrard's complaint for failure to state a claim, and
Jarrard appeals. We affirm.

## I. Background

On October 20, 1992, Gilbert Jarrard fell from a communications pole while on the job, suffering a crushed ankle and injuries to his shoulders, lower extremities, and back.

Jarrard underwent treatment for some of his injuries, but not the additional work-hardening and therapy that Jarrard claims were necessary to treat his remaining injuries. Unfortunately, persons employed by CDI and Crawford disagreed that Jarrard needed the additional treatment and therapy. Worse, from Jarrard's standpoint, these persons persuaded Jarrard's physician (who had been treating Jarrard's ankle and back injuries, and who had initially prescribed a work-hardening program), to issue a determination of "maximum medical improvement." According to Jarrard, this determination prematurely terminated his worker's compensation benefits, causing him to lose medical and temporary disability benefits that were to fund the treatment of his shoulder injuries until such time that he could return to work.

In October 1993, Jarrard requested an independent medical examination, but on Crawford's recommendation, Jarrard's request was denied. In January 1994, CDI applied to Indiana's Worker's Compensation Board ("the Board") for an adjustment of claim, seeking to impose on Jarrard an unfavorable permanent partial impairment rating and to foreclose additional medical and disability income benefits. A month later, CDI refused Jarrard's request for a physician to provide treatment for his shoulder injuries, and, in October 1994, Jarrard filed his own application for adjustment of claim with the Board.

Years later, on April 5, 1998, Jarrard filed a third-party complaint with the Board alleging that the defendants had acted in bad faith and committed other torts when they sought an adjustment of his compensation claim. Jarrard filed his complaint with the Board pursuant to the relevant

statutory provision, which, as of July 1, 1997, grants the Board exclusive jurisdiction over bad faith and other independent tort claims relating to adjustment of worker's compensation claims. Ind. Code § 22-3-4-12.1 ("the statute").[1]

The defendants filed a motion to dismiss, arguing that the Indiana legislature did not indicate that the statute was to be applied retroactively—the Board therefore did not have jurisdiction because the acts Jarrard complained of took place prior to the statute's effective date. In other words, because the Board's jurisdiction did not apply retroactively, Jarrard needed to vindicate his rights in state court, not before the Board. On February 10, 1999, the Board agreed and issued an order dismissing Jarrard's third-party claim on the basis that it did not have jurisdiction to hear his third-party complaint.[2] A final award in Jarrard's worker's compensation claim was entered on May 4, 2001. Jarrard never appealed the Board's dismissal of his third-party claim, nor did he file suit in state court.

---

[1] The statute provides:

> The worker's compensation board, upon hearing a claim for benefits, has the exclusive jurisdiction to determine whether the employer, the employer's worker's compensation administrator, or the worker's compensation insurance carrier has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation.

Ind. Code § 22-3-4-12.1(a)

[2] The Board's order, in relevant part, states:

> 1. Jarrard's Third-Party Complaint involves acts which occurred prior to the effective date of IC 22-3-4-1, effective July 1, 1997.

> 2. IC 22-3-4-12-1 is not retroactive and does not apply to Jarrard's allegations, thereby depriving the Board of jurisdiction to hear the Third-Party Complaint.

In February 2003, Jarrard filed a complaint in federal court on the basis of diversity jurisdiction, alleging that he suffered damages as a result of the "gross negligence" of CDI and Crawford in adjusting his claim. The defendants again moved to dismiss Jarrard's complaint, but this time the defendants argued a position opposite to the one taken before the Board: that *the Board* has exclusive jurisdiction, not the courts. In support of this position, the defendants cited Indiana caselaw—decided in the period after the Board dismissed Jarrard's first complaint—holding that the statute applies retroactively, so the Board was the exclusive forum for Jarrard's new complaint. The district court in essence[3] agreed with the defendants' position and dismissed Jarrard's complaint for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

## II. Discussion

On appeal, Jarrard argues that the district court improperly dismissed his case. As Jarrard sees it, the district court *did* have jurisdiction to hear his case because, under Indiana

---

[3] The defendants moved to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), because Indiana law grants the Board exclusive jurisdiction over worker's compensation and related tort claims like Jarrard's. As the district court explained, however, its jurisdiction arose from the federal diversity statute, 28 U.S.C. § 1332, and state law cannot enlarge or contract federal jurisdiction. *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002); *Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir. 1984). Nevertheless, the court concluded that Indiana law denied Jarrard a judicial remedy and, therefore, properly construed the defendants' motion as one brought pursuant to Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1). *See Goetzke*, 280 F.3d at 779 ("If state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted.").

law, the Board's entry of award accepting the defendants' interpretation of the statute was "final and conclusive." In other words, the district court was bound to accept the Board's determination that it had no retroactive jurisdiction. In any event, Jarrard argues that the defendants should not have been able to argue inconsistent positions before the Board and the district court. Jarrard asserts that it would be "unconscionable" to allow defendants to prevail on the basis of the inconsistent arguments, and that various preclusion and estoppel doctrines block the defendants from taking a position directly opposite to the position they took before the Board.

Because the district court dismissed Jarrard's complaint pursuant to Fed. R. Civ. P. 12(b)(6), our review in this case is *de novo. See Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004). Before turning to the merits, however, some expansion on the applicable law and key facts is in order. As indicated earlier, the relevant Indiana statute, which was effective as of July 1, 1997, grants exclusive jurisdiction to the Board to determine whether a worker's compensation insurance carrier acted in bad faith or committed other torts in adjusting or settling the aggrieved worker's claim. Ind. Code § 22-3-4-12.1(a); *see also Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 352 (Ind. 2003) (holding statute constitutional). As of the time Jarrard filed his third-party claim before the Board, the Indiana courts had not spoken regarding the statute's retroactivity.

Within months of the Board's dismissal of Jarrard's third-party claim, however, two Indiana Court of Appeals cases held that the statute in fact could be applied retroactively. *See Samm v. Great Dane Trailers*, 715 N.E.2d 420 (Ind. Ct. App. 1999); *Borgman v. State Farm Ins. Co.*, 713 N.E.2d 851 (Ind. Ct. App. 1999); *see also Goetzke*, 280 F.3d at 779-80 (analyzing changes in Indiana law wrought by the statute and *Samm*). In *Borgman*, the plaintiffs (like Jarrard) filed suit in Indiana court after the effective date of the statute

alleging tortious acts that took place before that date. *Borgman*, 713 N.E.2d at 853. The court dismissed the case, concluding that the statute applied retroactively, and thus the Board was the proper forum for the plaintiffs' suit. *See id.* at 853-54. The Indiana Court of Appeals held that the plaintiffs' complaint rested within the exclusive jurisdiction of the Board even though the acts complained of took place before the statute's effective date, and thus dismissal for lack of subject matter jurisdiction was appropriate. *See id.* at 855. Likewise, in *Samm*, the court reaffirmed *Borgman*'s holding that the statute can be applied retroactively to acts taking place before the statute's effective date. *See Samm*, 715 N.E.2d at 423-24.

In short, Indiana law required that Jarrard bring his claims before the Board, not the courts. Although this interpretation of the statute was not clearly established in Indiana law as of the time Jarrard brought his action before the Board in 1998, the interpretation was controlling as of the time he filed suit in federal district court in 2003. The defendants won a dismissal from the Board based on a colorable interpretation of the statute at the time, and then, years later, won another dismissal in federal court based on the recently decided Indiana caselaw refuting the defendants' proposed interpretation.

Unfortunately, somewhere along the way, Jarrard slipped through the cracks and has not been able to have his case heard on the merits before any tribunal. Jarrard first filed his claim with the Board, only to be told that he should have filed his claim in state court. When he later sought to vindicate his rights in federal court, he discovered that, as a result of Indiana caselaw decided in the interim, the proper forum for his claim was the Board after all. It is therefore easy to characterize Jarrard as being trapped in a sort of legal limbo over which he had no control—a "trick box," as the district court aptly described it.

This characterization does not tell the entire story, however. Jarrard was not without recourse when the Board dismissed his tort claims in February 1999. Jarrard need not have uncomplainingly accepted the defendants' and the Board's conclusions with respect to whether the statute applied retroactively. As Jarrard concedes, he could have appealed the Board's decision to the full Board in accordance with procedures set forth in Indiana law. Ind. Code 22-3-4-8. He would have had to file such an appeal by March 2, 1999, but Jarrard opted not to do so. Or Jarrard could have filed suit in court in response to the Board's determination that it did not have jurisdiction to hear his case. Indeed, had Jarrard expeditiously appealed the Board's decision or sought relief in state court, it is likely that the *Borgman* opinion (decided June 9, 1999) would have issued during the course of his appeal or state court litigation, perhaps settling the retroactivity question in Jarrard's favor in the nick of time.[4] Jarrard did none of these things, but he instead filed a complaint in federal court over four years after the Board's dismissal and well after the *Borgman* and

---

[4] Jarrard takes issue with what he believes is the district court's "erroneous conclusion that Jarrard still had a right to appeal after [*Borgman* and *Samm*] were decided." (Appellant Br. at 7.) We do not read the district court's order as expressing any such conclusion; rather, the court simply suggested (as we do) that Jarrard ought to have appealed the Board's unfavorable decision under the procedural mechanisms provided for under Indiana law.

Jarrard also contends that he did not appeal because "[t]here was no authority or support whatever for the 'retroactive' position later adopted by the Court of Appeals." (*Id.* at 14.) This is an odd proposition. The *Borgman* court did not invent its retroactivity holding out of whole cloth. Rather, the court undertook a straightforward interpretation of the statute's plain language and applied state law regarding the retroactive effect of Indiana statutes. *See Borgman*, 713 N.E.2d at 855 & n.1. There is nothing particularly novel about *Borgman*'s analysis, and Jarrard surely could have made similar arguments on appeal.

*Samm* cases were decided. In this regard, it appears that Jarrard's predicament is, at least in part, a problem of his own making. In any event, for the reasons discussed below, we conclude that Jarrard's arguments on appeal are unavailing, and the district court properly dismissed Jarrard's complaint.

### A.  The "Final and Conclusive" Board Decision and the Law of the Case Doctrine

Jarrard's arguments largely stem from his conception of the law of the case doctrine, so it is to this facet of Jarrard's appeal we turn first. Jarrard contends that when he filed his application for adjustment of claim in October 1994, it was settled law in Indiana that an employee could bring an independent tort cause of action in state court against an employer or its worker's compensation carrier. *See Stump v. Commercial Union*, 601 N.E.2d 327 (Ind. 1992). Such claims were governed by Indiana common law. *See Sims*, 782 N.E.2d at 351. This practice, of course, came to an end with the enactment of the statute, which requires that such claims be adjudicated by the Board.

Jarrard argues that under the law of the case doctrine, his complaint in federal court should have been governed by the common law. Specifically, Jarrard argues that when the Board concluded that it had no jurisdiction to hear Jarrard's claims, its determination was "final and conclusive" and "not subject to reversal by a civil court." (Appellant Br. at 10.) Jarrard further suggests that the decision to appeal the Board's final award was purely his choice, and when he opted not to appeal the award, the Board's determination became the law of the case—"binding not only on the Board and the parties, but on all courts subject to Indiana law." (*Id.* at 7.) Indeed, Jarrard contends that Indiana cases decided following the Board's final award, such as *Borgman*, "had no effect on Jarrard or on [the defendants], for whom the 'final and conclusive' determination of 'no jurisdiction'

had been made by the . . . Board on March 2, 1999." (*Id.* at 15.) As Jarrard sees it, the Indiana courts (or federal district court exercising diversity jurisdiction) must therefore entertain his tort claim, regardless of the statute's exclusivity provision and controlling Indiana caselaw giving it retroactive effect.[5]

Precedent teaches that, "[a]s most commonly defined, the [law of the case] doctrine . . . posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case.*" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (citation omitted) (emphasis added); *see also id.* at 816 ("[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."). The doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *Evans v. City of Chi.*, 873 F.2d 1007, 1014 (7th Cir. 1989) (quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972)). It is well established that under the doctrine, "matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and, on second appeal, in the appellate court, unless there is plain error of law in the original decision." *See Evans*, 873 F.2d at 1013-14 (internal quotes and citation omitted). The doctrine does not apply if the prior decision is clearly erroneous—if, for

---

[5] There are at least two reasons why Jarrard must take the position that the governing law of the case is fixed in time pre-*Borgman*. Obviously, if the statute retroactively applies to his claims, Jarrard loses because the Board, not the courts, has exclusive jurisdiction over his third-party claims, and dismissal is proper. Less obvious, but just as critical as far as federal jurisdiction goes, is the fact that the statute caps his recovery at $20,000, an amount well below the price of admission to federal court on the basis of diversity of citizenship. Ind. Code § 22-3-4-12(b), (f); 28 U.S.C. § 1332.

example, "controlling authority has since made a contrary decision of law[.]" *See id.* at 1014 (collecting authority). Indiana's version of the doctrine is virtually identical. *See, e.g., In re Adoption of Baby W.*, 796 N.E.2d 364, 372 (Ind. Ct. App. 2003) ("[T]he law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts."); *Platt v. State*, 664 N.E.2d 357, 361 (Ind. Ct. App. 1996) (collecting authority).

Given this well-established authority, it is apparent that Jarrard misapprehends the law of the case doctrine.[6] Jarrard's federal case was not a successive stage in the same action he previously had filed before the Board. When Jarrard filed his third-party claims before the Board and, later, his complaint in federal court, Jarrard initiated two separate cases. But even if Jarrard's federal case could be considered a subsequent stage of the same litigation (or the Board a coordinate or appellate court), the district court was not obliged to follow the Board's dictates regarding the statute's retroactivity in light of controlling Indiana law making it clear that the Board's interpretation of the statute was erroneous. *See Evans*, 873 F.2d at 1014; *cf.*

---

[6] Indeed, by arguing that all subsequent tribunals (including the district court) are bound by the Board's jurisdictional determination, Jarrard essentially argues not that the law of the case applies, but that the Board's decision is entitled to the force of stare decisis. *See Midlock v. Apple Vacations West, Inc.*, ___ F.3d ___, No. 04-2615, 2005 WL 948826, at *3 (7th Cir. Apr. 20, 2005). It is unclear whether Indiana imparts stare decisis effect to the decisions of the Board, but even if it does, the subsequent caselaw rendered by the Indiana Court of Appeals trumps the Board's decision. *See Lincoln Utils., Inc. v. Office of Util. Consumer Counselor*, 661 N.E.2d 562, 565 (Ind. Ct. App. 1996) ("The decisions of the appellate districts are law governing all of Indiana and cannot be disregarded.").

*Christianson*, 486 U.S. at 817 (teaching that even if a co-ordinate court's decision regarding jurisdiction is the law of the case, a subsequent coordinate court may decline jurisdiction if the prior decision is "clearly wrong"); *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001); *Lincoln Utilities*, 661 N.E.2d at 565.

The caselaw Jarrard cites does not change our conclusion. In particular, Jarrard relies heavily on *Rassbach v. Alcala*, 775 N.E.2d 353 (Ind. Ct. App. 2002), for his theory that the Board's final award was "binding not only on the board and the parties, but on all courts subject to Indiana law." In *Rassbach*, the plaintiffs filed a worker's compensation claim for injuries suffered during a car accident that took place prior to the plaintiffs' work shift but on a road on the premises of their employer's place of business. *Id.* at 355. The Board dismissed the plaintiffs' claim, concluding that the accident did not arise in the course of the plaintiffs' employment because, in part, the road upon which the accident occurred was a municipal road. *Id.* at 355-56. The plaintiffs did not appeal the Board's decision, but filed negligence claims in the trial court. *Id.* at 356. The defendant then filed a motion to dismiss for lack of subject matter jurisdiction on the basis that the accident *had* occurred on the employer's property, and thus the Board had exclusive jurisdiction over the claim. *Id.* The trial court agreed with the defendant's argument and concluded that the accident occurred on the employer's premises, thus giving rise to a worker's compensation claim within the Board's exclusive jurisdiction.

On appeal, the Indiana Court of Appeals reversed the trial court's order dismissing the case. The court concluded that Indiana law did not empower trial courts to review a Board's decision or to determine whether the Board's decision is correct. *Id.* at 359. By revisiting factual determinations made by the Board, the trial court had "invaded the exclusive province of the Board." *Id.*

*Rassbach* is inapposite to the present case. True, *Rassbach* held that the trial court was required to abide by the Board's determination regarding its jurisdiction, a point which echoes Jarrard's argument here. The similarity ends there, however. In *Rassbach*, the Board's jurisdictional determination arose from factual findings relating to the merits of the plaintiffs' worker's compensation, and the trial court revisited the Board's factual conclusions. Indiana law clearly establishes the procedure by which a party may appeal a Board's decision, and a trial court is not to second-guess the correctness of the Board's decision. In contrast, in the present case, the Board's conclusion that it had no jurisdiction to hear Jarrard's third-party claims arose not from a factual determination relating to the merits, but from a colorable (albeit erroneous) interpretation of the statute's retroactivity provision. Subsequent Indiana caselaw, of course, proved that interpretation wrong as a matter of law, and this caselaw is controlling. *See Lincoln Utilities*, 661 N.E.2d at 565. The district court certainly did not invade the Board's exclusive province simply by applying the controlling law as set forth in *Borgman*.

The Board's jurisdictional determination was not "final and conclusive" in the way Jarrard would have it. Simply put, the district court was not bound by the Board's determination regarding the statute's retroactivity and neither are we. We therefore reject Jarrard's contention that the law of the case doctrine compelled the district court to entertain Jarrard's claims under the common law scheme in place prior to the statute's enactment and subsequent Indiana caselaw.

### B. Judicial Estoppel

Jarrard's next argument concerns the doctrine of judicial estoppel. Jarrard argued in the district court that judicial

estoppel foreclosed the defendants' argument that the Board has exclusive jurisdiction, because the defendants had previously argued to the Board that it had no jurisdiction. The district court disagreed with Jarrard's position because the Indiana cases decided in the interim indicated that the defendants' changed position did not result from misconduct. Jarrard now renews his judicial estoppel argument on appeal, contending that the defendants "may not now argue and prevail on the exact opposite motion" and that "[a]llegations in pleadings in the same or former action made in the course of judicial proceedings will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party to the prejudice of his opponent." (Appellant Br. at 8.)

We first note that, in light of the preceding analysis, we likely do not need to address Jarrard's judicial estoppel argument. Indiana law clearly vests exclusive jurisdiction in the Board, and that jurisdiction applies retroactively to cases like Jarrard's. *See Borgman*, 713 N.E.2d at 855. So even if the defendants had not taken an inconsistent position before the district court regarding the Board's jurisdiction, Jarrard would be foreclosed from bringing his claims in federal court (or Indiana court, for that matter). In other words, it appears that application of the doctrine of judicial estoppel cannot save Jarrard's federal court action because Indiana law doomed it from the start no matter what position the defendants took regarding jurisdiction. *Cf. Goetzke*, 280 F.3d at 779.

Nevertheless, even if we take up Jarrard's judicial estoppel argument, it fares no better here than it did in the district court. Although Jarrard's complaint was founded on diversity jurisdiction, we apply federal (not Indiana) caselaw with respect to judicial estoppel. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 n.1 (7th Cir. 1999) (concluding that federal, not state, law governs the doctrine even in diversity cases); *Ryan Operations*

*G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 n.2 (3d Cir. 1996) ("A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.").

It is well established that the doctrine of judicial estoppel acts "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted). More specifically, the doctrine aims to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit. *See Odgen Martin Sys.*, 179 F.3d at 526; *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) (Judicial estoppel "protect[s] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."). Judicial estoppel is an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process, *see Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citations omitted), and it serves to "reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant." *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998).

Therefore, no precise or rigid formula guides the application of judicial estoppel. Nevertheless, precedent teaches that several factors are relevant in deciding whether invocation of the doctrine may be appropriate. First, a party's position must be clearly inconsistent with a position earlier taken. *New Hampshire*, 532 U.S. at 750 (collecting authority). Second, the party must have prevailed on the basis of its earlier position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (citation and internal quotes omitted). Third, we consider whether the party asserting the inconsistent position "would derive an unfair advantage or impose an unfair detriment

on the opposing party if not estopped." *Id.* at 751 (citations omitted). A fourth factor to consider is whether the operative facts remain the same in both cases. *Ogden Martin Sys.*, 179 F.3d at 527.

At first blush, considering these factors alone, Jarrard's argument seems somewhat persuasive. After all, the defendants *did* successfully argue before the Board in that it had no jurisdiction, and then prevailed in the district court on the basis that the Board in fact does have exclusive jurisdiction. But matters become hazier for Jarrard when we consider the strong antifraud purposes animating the doctrine. There is more to the doctrine than the prevention of the sort of flip-flop of which Jarrard complains. Judicial estoppel is intended to protect the courts from the litigatory shenanigans that would result if parties could, without limitation or consequence, swap litigation positions like hats in successive cases based on simple expediency or self-benefit. Judicial estoppel shields the courts from being the instrument of such misconduct. *See In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process.")

In this case, the position the defendants took before the Board—that the Board did not have jurisdiction because the statute was not retroactive—was a fair reading of the statute. The defendants were well within their rights to advocate this interpretation in good faith, and the Board agreed with that interpretation. The law changed in the interim, when the Indiana courts interpreted the statute the other way. As a consequence, the defendants argued a position in federal court opposite from the one taken before the Board. There is nothing fraudulent or otherwise untoward about this shift, even though the results ended up being favorable to the defendants in each instance.

Jarrard argues that it would be "unconscionable" to let defendants get away with this shift, a fairness argument im-

plicating the third factor. In conformance with the doctrine's antifraud purpose, however, fairness must be viewed in the context of the defendants' motive in changing positions and not solely in the context of the unfavorable result to Jarrard. In light of the change in Indiana law, the defendants' motives are not suspicious, because, for the reasons given, the defendants could not have argued their prior position without running afoul of controlling Indiana caselaw. Judicial estoppel should not be used to work an injustice, *id.* at 642, particularly when the defendants' change in position resulted from circumstances outside their control—namely, a change in controlling state law. *Cf. New Hampshire*, 532 U.S. at 755 (recognizing that judicial estoppel might not be applicable if inconsistent positions result from change in public policy, statutory provisions, or facts) (citations omitted); *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998) (Judicial estoppel "will not apply where inconsistent positions are asserted in good faith or through inadvertence.").

In sum, the defendants' arguments, though facially inconsistent, were not an attempt to play "fast and loose" with the court, and thus the broad antifraud purpose of judicial estoppel does not come into play here. For this reason, we conclude that Jarrard's judicial estoppel argument fails.

### C. Res Judicata and Collateral Estoppel

Jarrard's remaining arguments regarding res judicata and collateral estoppel also fall short.

We turn first to Jarrard's res judicata (or claim preclusion) argument. Unlike the law of judicial estoppel, we apply state law when our jurisdiction rests on diversity of citizenship, and the adjudication argued to have preclusive effect (under either res judicata or collateral estoppel) was issued by a state tribunal. *See Xantech Corp. v. Ramco Indus., Inc.*, 159 F.3d 1089, 1092 (7th Cir. 1998); *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136-37 (7th Cir. 1998). Indiana law recognizes res judicata

as actually comprising two separate branches—claim preclusion and issue preclusion. *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005). Claim preclusion (which Jarrard calls res judicata) "precludes re-litigation of a cause of action that has been fully and finally determined on its merits by a court of competent jurisdiction." *Neese v. Kelley*, 705 N.E.2d 1047, 1051 (Ind. Ct. App. 1999); *see also id.* ("[W]hen a party relies on res judicata, he or she must prove that the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction.").

Jarrard offers the conclusory assertion that res judicata bars defendants' motion to dismiss because the parties' rights "were fixed by the 'final and conclusive' ruling of the Board, and were not affected by the decisions in the *Borgman* or *Sims* cases." (Appellant Br. at 18.) Thus, Jarrard suggests that the Board's conclusion that it had no jurisdiction amounted to a prior adjudication on the merits barring the district court from looking to *Borgman* or other caselaw inconsistent with the Board's "final and conclusive" determination. We disagree. As with his previous arguments, Jarrard displays a less-than-complete understanding of the relevant doctrine at issue. The Board's dismissal on the basis of jurisdiction certainly did not amount to a full and final adjudication on the merits of Jarrard's tort claims, so res judicata, or claim preclusion, clearly does not apply here.

Jarrard's collateral estoppel argument fails for the simple reason that he failed to develop it in the district court (or here for that matter) with citation to relevant authority or meaningful argument. Jarrard has therefore forfeited his collateral estoppel argument. *See Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (holding that "perfunctory and undeveloped arguments that are unsupported by pertinent authority" are forfeited on appeal).

In sum, for all of the reasons given, Jarrard's complaint was properly dismissed. As a final point, we add that the outcome in this case brings no satisfaction, for we believe that Jarrard has, in a sense, slipped through the cracks as a result of bad timing and his decision to forego any appeal or litigation in state court on the heels of the Board's dismissal of this third-party claims. As it stands, however, Indiana law vests exclusive jurisdiction over claims like Jarrard's in the Board, not the courts. Whether Jarrard may seek recourse or equitable relief before the Board or Indiana's courts at this late juncture is an open question, but it is certain that the federal courts are not empowered to grant Jarrard the relief he seeks. *See Goetzke*, 280 F.3d at 779 ("[A] federal forum, when invoked on grounds of diversity of citizenship, cannot give that which the state has withheld.") (citation, internal quotations, and brackets omitted).

## III.  Conclusion

For the reasons given, we AFFIRM the order of the district court dismissing Jarrard's complaint.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*