**In re Mike SIMPSON, Jr. and Eula Louise Simpson, Debtors.**

**No. C/A 03–07158–JW.**

United States Bankruptcy Court, D. South Carolina.

Nov. 13, 2003.

269 B.R. 686 (Bankr.W.D.Mo.2001) ($150.00 per month recreation expense for family of three excessive).

Lola S. Richey, Greenville, SC, for Debtor.

## ORDER FOR SANCTIONS AND DISMISSAL OF CASE WITH PREJUDICE

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon BB & T and BB & T Bankcard Corporation's (collectively "BB & T") Motion to Reconsider and Amend Order Dismissing Debtors' Case and Motion for Attorneys Fees and Costs ("Motion"). Based upon the record developed in this case, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1. On June 13, 2003, Mike Simpson, Jr. ("Mr. Simpson") and Eula Simpson ("Mrs. Simpson") (collectively, "Debtors") filed a Voluntary Petition for Chapter 13 Bankruptcy. The bankruptcy filing stayed BB & T's state court debt collection action and Wachovia Bank's mortgage foreclosure of Debtors' real property in Easley, South Carolina (the "Easley Property"). Prior to their bankruptcy filing, Debtors defended and opposed BB & T's and Wachovia's

---

1. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

collection actions. Throughout the litigation Debtors did not dispute personal jurisdiction or venue.

2. In their Petition, Debtors signed and declared under penalty of perjury that they "ha[ve] been domiciled or ha[ve] had residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District," and Debtors warranted that "the information provided in this petition is true and correct." Similar attestations appear above Debtors' signatures on the last page of their Schedules and on the concluding page of their Statement of Financial Affairs.

3. In their Schedules, Debtors confirmed their South Carolina domicile and their longstanding ownership (since 1992) of the Easley Property, a two story, 3000 square foot residence with four bedrooms and 3½ baths and a tax assessment value of $180,700.00. However, Debtors asserted that this property had a value of only $130,000.00 with first and second mortgage balances totaling approximately $157,000.00. Debtors also proposed to value a second mortgage on the Easley Property at $0.00, and thus void the secured mortgage lien.

4. Debtors also disclosed ownership of a single parcel of real estate, with three bedrooms and 1½ bath, located at 4724 Saint Katherine Street, Baton Rouge, Louisiana (the "Saint Katherine Property"), which was occupied by a relative. Debtors asserted that the value of the Saint Katherine Property was only $30,000.00 with a mortgage claim of $33,200.00.

5. Debtors further disclosed a single South Carolina checking account with a $200.00 balance and identified ownership of two vehicles, a BMW and a Jeep. All values listed exactly match or very closely approximate the applicable exemptions.

6. Debtors scheduled over $100,000 in unsecured non-priority debt, not including Wachovia's $19,000.00 second mortgage or BB & T's $10,000.00 judicial lien. As to those debts, Debtors proposed to value the Wachovia second mortgage at $0.00 and to avoid BB & T's judicial lien so as to convert both debts to unsecured status.

7. On June 27, 2003, Debtors filed a proposed Chapter 13 Plan (the "Plan") providing a payment of $1,800.00 a month for 36 months. Based on Debtors' assertions of a lack of non-exempt equity in all assets, Debtors' Plan proposed to pay a 1% dividend payment to unsecured creditors.

8. On June 30, 2003, creditors Hanna Yigletu, Oswaldo Loth, and Idalina Augusto (collectively, "YLA") of Louisiana, filed a proof of in the amount of $18,636.00 for "money loaned." Attached to the proof of claim was an objection to the jurisdiction of the Court in South Carolina because YLA believed Mr. Simpson was a resident of Louisiana. Thereafter, YLA filed an objection to Confirmation of Chapter 13 Plan stating *inter alia* that Debtors should be thoroughly examined regarding their property holdings in Louisiana.

9. On July 2, 2003, Ford Motor Credit Company ("FMCC") filed and served an objection to the Plan. FMCC's objection noted that Debtors failed to disclose ownership of a 2000 Ford Mustang and that the proposed Plan failed to address FMCC's lien and debt.

10. On July 17, 2003, BB & T filed and served an objection to the Plan. BB & T's objection asserted that Debtors failed to disclose all non-exempt assets and that the Plan did not properly provide for unsecured creditors. BB & T also alleged a lack of good faith on Debtors' part.

11. Also on July 17, 2003, Wachovia filed an objection. Wachovia objected to Debtors' valuation of Wachovia's second mortgage lien on Debtors' residence at $0.00. Wachovia also alleged there was sufficient value in Debtors' real estate collateral for full payment.

12. On July 25, 2003, Debtors appeared at the first meeting of creditors. In response to questions from the Chapter 13 Trustee, Debtors testified under oath that the information in the Schedules and Statement of Affairs and other disclosures were accurate and complete. They also reiterated that the value of the Easley Property was only $130,000.00.

13. Also on July 25, 2003, Debtors filed amended Schedules B, C, D and G. Such amendments merely added FMCC as a creditor, served to confirm that FMCC has an ownership interest in the 2000 Ford Mustang, and modified Schedule C to claim an exemption for the 2000 Mustang. On that amended Schedule C, Debtors reiterated that their interest in Easley Property was worth $130,000.00 as opposed to the $180,700.00 tax assessed value. Once more, Debtors signed under penalty of perjury and verified such documents.

14. On or about August 7, 2003, Debtors filed and served an Amended Plan that added the Wachovia second mortgage as a fully secured debt and withdrew Debtors' proposed valuation of $0.00. The Amended Plan eliminated Debtors' motion to avoid the BB & T judicial lien and listed that debt as fully secured by the Easley Property and proposed full payment under the Amended Plan. The Amended Plan also provided for full and direct payment to FMCC.

15. The Amended Plan again proposed only a 1% dividend payment to unsecured creditors.

16. On August 30, 2003, BB & T filed and served its objection to Debtors' Amended Plan. BB & T's objection asserted *inter alia* that the Amended Plan did not provide a sufficient payment to unsecured creditors. The objection also specifically alleged that Debtors had "willfully fail[ed] to disclose all non-exempt assets" and that the "Debtors have grossly undervalued various assets and non-exempt equity in a willful attempt to avoid proper payment to unsecured" and undersecured creditors. Again, BB & T alleged an absence of good faith on Debtors' part.

17. On September 5, 2003, YLA filed an Objection to Confirmation of Amended Plan, reiterating their previous objections, joining the objection of BB & T, and asserting that Debtors have undervalued their properties in Louisiana and South Carolina,

18. On September 7, 2003, BB & T filed an Amendment to its objection. In the Amendment, BB & T attached supporting exhibits and photographs and alleged: (1) that Debtors failed to disclose ownership of significant non-exempt equity in certain real estate at the Country Club of Louisiana (the "Country Club Property") which had a $309,000.00 purchase price in the year 2000 and a current tax value of a similar amount; (2) that Debtors failed to disclose an interest in a bank account at the Bank of West Baton Rouge; (3) that the Saint Katherine Property which Debtors disclosed was undervalued at $30,000.00 because the Saint Katherine Property has a current tax value of $55,000.00 and a lien of less than $31,000.00; (4) that Debtors' Easley Property was grossly undervalued at $130,000.00; (5) that, even if the generally conservative $180,700.00 tax value were used, the Easley Property would yield substantial non-exempt equity above and beyond all liens; and (6) that as early as 1995

Debtors represented that their Easley Property and Saint Katherine Property had a combined value of no less than $300,000.00.

19. Real estate Multiple Listing Service documents demonstrate that, as of September 15, 2003, Debtors list their Easley Property for sale at $235,000.00. Despite BB & T's and YLA's assertions and contrary evidence of value, Debtors did not offer an amendment, explanation, or correction to the Schedules or Statement of Affairs.

20. The Court set a hearing on Confirmation and any objections for September 16, 2003. All necessary parties were notified of the hearing date and time. However, on Friday, September 12, 2003, without service or notice to any creditor including BB & T and YLA, Debtors filed a Motion to Dismiss Case.

21. On September 16, 2003, BB & T and YLA were present through their counsel and advised the Court that no resolution had been reached and that both objecting creditors were prepared to be heard. Upon that announcement, counsel for the absent Debtors disclosed that Debtors' Motion to Dismiss Case had been filed. Inasmuch as 11 U.S.C § 1307 provides Debtors a right to voluntarily dismiss the case, no hearing was held on that date.

22. On September 18, 2003, pursuant to Debtor's Motion to Dismiss, an Order dismissing Debtors' case was entered. On September 27, 2003, BB & T filed the Motion the Court now considers. The Motion seeks attorneys' fees and costs incurred by BB & T's and YLA's counsel in their efforts to uncover and expose Debtors' non-disclosure and undervaluation of assets. BB & T also filed and served an Affidavit in Support of Fees and Costs for J. William Ray, Esq. (the "Affidavit") that provided a summary of the activities J.

William Ray performed and the resulting $4,600.00 in fees and $74.14 in costs BB & T incurred. Debtors objected to BB & T's Motion stating that Debtors' could not successfully complete a Chapter 13 Plan and that BB & T should pursue its rights by participating in a foreclosure action of the Easley Property.

23. On Tuesday, October 14, 2003, the Court held a hearing on BB & T's Motion in Spartanburg. BB & T offered self-authenticating certified copies of Louisiana real estate records and those records were admitted into evidence. Despite having notice of the hearing as confirmed by Debtors' counsel, Debtors did not appear or offer any evidence to refute BB & T's allegations and proof.

## CONCLUSIONS OF LAW

### I. DEBTORS' DUTY TO DISCLOSE AND ACCURATELY VALUE ASSETS

 The Bankruptcy Code provides that Debtors' foremost responsibility is to cooperate with the Court and the Trustee and to facilitate the accurate and proper performance of their duties. *See* 11 U.S.C. § 521. Since bankruptcy schedules and statements are carefully designed to elicit certain information necessary for the proper administration of cases, Debtors' have a duty to complete these documents thoughtfully and thoroughly. *See In re Phillips*, C/A No. 02–10461, slip op. at 4 (Bankr. D.S.C. Feb. 21, 2003). Furthermore, accuracy, honesty, and full disclosure are critical to the functioning of bankruptcy and are inherent in the bargain for a debtor's discharge. *See id.* at 3 (citing *Kestell v. Kestell*, 99 F.3d 146, 149 (4th Cir.1996)). Therefore, debtors are responsible for disclosing an accurate and complete schedule of assets with proper values and a truthful statement of affairs in order to convey a complete and accurate portrayal of their

financial situation. *See id.* at 3 ("Debtors bear the burden of proving that their Plan meets the confirmation requirements of § 1325(a), and part of this burden includes proving that the values used in their Plan are adequate"); *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (Bankr.D.S.C. 1995)("The critical time for disclosure is at the time of the filing of a petition and the Debtor has the responsibility to do so. Bankruptcy law requires debtors to be honest and to take seriously the obligation to disclose all matters."). Furthermore, there is no allowance for selectivity in asset disclosure. *Id.* ("To allow the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system."). As a result of debtors' duty to accurately and completely disclose assets and the corresponding values, if complete and full disclosure is not made in the schedules and statements, debtors run the risk of having their entire case dismissed or converted to Chapter 7 or not receiving a Chapter 7 discharge. *In re Phillips*, C/A No. 02–10461–W, slip op. at 4.

## II. DISMISSAL OF DEBTORS' CASE WITH PREJUDICE

■ Debtors failed to fully disclose their financial situation while in the bankruptcy because (1) Debtors' concealed their interest in the Country Club Property, a material and significant asset of Debtors' bankruptcy estate; (2) Debtors significantly undervalued assets; (3) Debtors submitted inaccurate schedules and statements; and (4) Debtors testified falsely at their Section 341 hearing when questioned about the accuracy and completeness of their schedules. Absent the failure to fully and accurately disclose as-

sets and the corresponding values, Debtors have a right to dismiss their Chapter 13 case pursuant to 11 U.S.C. § 1307(b). 11 U.S.C. § 1307(b).[2] However, Debtors' pattern of conduct indicates an ongoing scheme to conceal their interest in the Country Club Property and undervalue their interests in the Easley Property and the Saint Katherine Property in an effort to abuse the Bankruptcy Code and Rules. In light of such a finding, the Court shall dismiss Debtors' case with prejudice for a significant period of time to prevent Debtors' further abuse and dilatory conduct. The 180 days suggested by Debtors' counsel is far too short to deter Debtors' misconduct or to discourage similar misbehavior by others. Given the nature of Debtors' conduct, Debtors are barred from filing for bankruptcy under any chapter of Title 11 of the United States Code for a period of eighteen months from the date of entry of this Order. *In re Robertson*, C/A No. 03–05257–W, slip op. (Bankr.D.S.C. Oct. 3, 2003).

## III. AWARDING ATTORNEYS' FEES AS A SANCTION AGAINST DEBTORS

■ The Court also notes that BB & T requested attorneys' fees as a sanction for Debtors' failure to disclose the Country Club Property and significantly undervaluing the Easley Property and Saint Katherine Property in a manner that conceals available equity. BB & T's request is a departure from the general rule that a litigant cannot recover counsel fees. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)(citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The authority to depart from the general rule that a

**2.** 11 U.S.C. § 1307(b) provides that, in the absence of a prior conversion to another chapter of the Code, the Court shall dismiss a

case filed under Chapter 13 upon debtor's request.

litigant cannot recover counsel fees must either come from any of the following: (1) a statutory provision authorizing a recovery of attorneys' fees (e.g. 28 U.S.C. § 1927 and Fed. Bankr.R.P. 9011); (2) exercising the Court's authority under 11 U.S.C. § 105(a); or (3) exercising the Court's inherent authority and finding either bad faith, as demonstrated by clear and convincing evidence, or willful disobedience of a court order. *See U.S. v. Seltzer*, 227 F.3d 36, 40–42 (2nd Cir.2000).

Debtors signed their Petition and Schedules under penalty of perjury without fully disclosing the extent of their assets or accurately disclosing the corresponding values. Debtors also appeared at the first meeting of creditors and again failed to disclose the full extent of the assets they owned or correct any statements of valuation. Furthermore, Debtors signed Amended Schedules that continued their non-disclosure of the Country Club Property to the Trustee and the Court. Throughout the case, Debtors had ample opportunities to fully disclose their interest in the Country Club Property and provide accurate values for the Easley Property and the Saint Katherine Property, but failed to do so. By willfully providing inaccurate values for the assets that Debtors disclosed in order to conceal non-exempt equity, Debtors violated 11 U.S.C. § 521 and sought to circumvent 11 U.S.C. § 1325. Debtors gave no regard to their duties of "complete disclosure" and their failure to fully and completely disclose assets is indicia of misconduct. *See In re Brunner*, C/A No. 92–71010–B, slip op. (Bankr.D.S.C. June 10, 1992); *In re Trexler*, C/A No. 02–04126–W, slip op. (Bankr. D.S.C. Oct.22, 2002). Thus, the Court believes that Debtors' systematic failure to be candid with the Court by failing to disclose their interest in the Country Club Property and significantly undervaluing the Easley Property and the Saint Kath-erine Property in a manner that conceals available equity demonstrates bad faith.

Therefore, in addition to dismissal with prejudice, as an additional sanction Debtors shall pay all fees, costs and expenses that BB & T incurred in exposing Debtors' misconduct to the Court. The record demonstrates BB & T incurred and accrued no less than four thousand six hundred seventy four dollars and fourteen cents ($4,674.14) in out-of-pocket expenses and fees in exposing the misconduct of Debtors.

## IV. Court's Authority to Sanction

The ordering of sanctions in this case is based upon a consideration of the totality of the circumstances present, including consideration of the lowest amount necessary to deter future abuses by Debtor and upon the Court's authority to sanction pursuant to 11 U.S.C. § 1307, 11 U.S.C. § 105(a), Fed. R. Bankr.P. 9011, and the Court's inherent authority to regulate litigants before it in order to address improper conduct, as recognized by the Fourth Circuit Court of Appeals in *McGahren v. First Citizens Bank & Trust, Co. (In re Weiss)*, 111 F.3d 1159 (4th Cir.1997). *See also In re Craigo*, C/A 03–02444, slip op. at 2 (Bankr.D.S.C.2003).

## V. Conclusion

For the reasons set forth above, it is

**ORDERED** that, upon reconsideration, this case is hereby dismissed with prejudice and Debtors are hereby barred from filing for bankruptcy under any chapter of the Title 11 of the United States Code for a period of eighteen months from the date of entry of this Order; and it is further

**ORDERED** that Debtors shall pay J. William Ray, Esq., counsel for BB & T, the sum of four thousand six hundred seventy four dollars and fourteen cents

($4,674.14) within fifteen (15) days from the date of entry of this Order.

## JUDGMENT

Based on the Findings of Fact and Conclusions of Law in the attached Order, BB & T and BB & T Bankcard Corporation's Motion to Reconsider and Amend Order Dismissing Debtors' Case and Motion for Attorneys' Fees and Costs is granted to the extent set forth in the attached Order.