979 So.2d 53 (2007)
Daniel A. MIDDLETON, Jr.
v.
CATERPILLAR INDUSTRIAL, INC.
1050939.
Supreme Court of Alabama.
August 17, 2007.
*55 David Michael Huggins and Gordon K. Howell of Turner, Onderdonk, Kimbrough, Howell, Huggins & Bradley, P.A., Mobile; and E. Paul Gibson of Riesen Law Firm, L.L.P., North Charleston, South Carolina, for appellant.
Edward S. Sledge III and W. Craig Hamilton of McDowell Knight Roedder & Sledge, L.L.C., Mobile, for appellee.
COBB, Chief Justice.[1]
Daniel A. Middleton, Jr., the plaintiff in a personal-injury action in the Mobile Circuit Court, appeals from a summary judgment in favor of the sole remaining defendant, Caterpillar Industrial, Inc.[2] We reverse and remand.

I. Background
Middleton was employed as a maintenance mechanic by Ryan-Walsh, Inc., now known as Stevedoring Services of America Gulf Terminals, Inc. (hereinafter "SSA"), at its facility in Charleston, South Carolina. On December 21, 2000, Middleton drove a Caterpillar Model T50D industrial lift truck into a parking lot, raised the mast and carriage of the lift truck approximately 11 to 13 feet, and, while the lift truck was still running, stood in front of the lift truckand under the raised mast and carriageto troubleshoot a reported leak in the hydraulics of the lift truck. He did not attempt to support the carriage in any manner. As Middleton searched for the leak, a loss of hydraulic pressure occurred, causing the mast and carriage to fall, crushing Middleton's right arm near his shoulder. The injury required the surgical amputation of his right arm.
Shortly before his injury, on September 28, 2000, Middleton had filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of South Carolina. As part of his Schedule B, which requires the debtor to list personal property, Middleton was obligated to disclose "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Middleton never amended his Schedule B after he was injured to show his potential claim against Caterpillar, and on March 1, 2001, the bankruptcy court approved Middleton's proposed bankruptcy plan without disclosure of that claim. However, the bankruptcy proceeding was dismissed on June 8, 2001, because of Middleton's failure to comply with the orders of the bankruptcy court.
Middleton again filed for Chapter 13 bankruptcy protection in the Bankruptcy *56 Court for the District of South Carolina on June 28, 2001. Middleton did not disclose in his Schedule B filed in the second bankruptcy proceeding his potential claim against Caterpillar. The bankruptcy court approved Middleton's bankruptcy plan on August 27, 2001. The plan allowed Middleton to avoid certain nonpossessory, nonpurchase-money security interests as well as to pay his general unsecured creditors only 5 percent of their allowed claims over a 54-month period.
Middleton's bankruptcy counsel filed a motion with the bankruptcy court on February 3, 2005, seeking a three-month moratorium on Middleton's payments under the bankruptcy plan. As grounds for his motion, Middleton's bankruptcy counsel stated that Middleton "has had substantial difficulty making his required payments due to his short term disability ending and having no income while he awaits to be put on long-term disability." The bankruptcy court granted the motion on February 28, 2005.
As a result of his injury, Middleton filed a worker's compensation claim against his employer, SSA, under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. On April 28, 2005, the United States Department of Labor's Office of Workers' Compensation Programs approved a settlement between SSA and Middleton pursuant to which Middleton received $69,900. At no time did Middleton submit an amended Schedule B notifying the bankruptcy court and his creditors of his worker's compensation claim, either after the claim was filed or after the settlement was approved.
On December 20, 2002, Middleton filed the underlying personal-injury action in the Mobile Circuit Court, asserting that one of the named defendants, Ryan-Walsh, Inc., now known as SSA, was an Alabama corporation whose principal place of business was Mobile County.[3] Even after the personal-injury action was filed, Middleton did not amend his Schedule B to notify the bankruptcy court of his potential claim against Caterpillar. Among the interrogatories propounded upon Middleton by Caterpillar was the following:
"State whether you have ever been involved in any other legal action in any country or jurisdiction (including any bankruptcy matter), and, if so, identify the date, place, nature of and disposition of each such action, giving the name of the court, the name of the other party or parties involved, the number of such action, and the names of the attorneys representing each party."
(Emphasis added.) On August 18, 2005, Middleton submitted to Caterpillar the following sworn amended answer in response to the above-quoted interrogatory: "Plaintiff filed a worker's compensation claim as a result of this accident." Middleton never did disclose in his responses to interrogatories that he had filed a petition in bankruptcy.
On October 26, 2005, Caterpillar moved the trial court for a summary judgment in its favor based on the doctrine of judicial estoppel, asserting that Middleton had never disclosed his claim against Caterpillar as an asset in the bankruptcy proceeding. Only after Caterpillar filed its motion for a summary judgment did Middleton amend his Schedule B to include his claim against Caterpillar, as well as his worker's compensation settlement. In response to Caterpillar's summary-judgment motion, Middleton stated that he was unaware that he should have amended his Schedule B and that his failure to do so "was inadvertent at most." The trial court, however, *57 agreed with Caterpillar that Middleton was judicially estopped from pursuing his action against Caterpillar, and it granted Caterpillar's summary-judgment motion. Middleton filed a motion to alter, amend, or vacate the summary judgment, which the trial court denied. In denying the motion to alter, amend, or vacate, the trial court stated that a summary judgment was due to be entered in Caterpillar's favor based not only on the doctrine of judicial estoppel, but also on the affirmative defense of assumption of the risk.

II. Standard of Review
Caterpillar urges this Court to join the majority of federal appellate courts and adopt a standard when reviewing a trial court's application of judicial estoppel that asks whether the court, in applying that doctrine, exceeded its discretion. See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31-32 (1st Cir. 2004); Coastal Plains, Inc. v. Mims, 179 F.3d 197, 205 (5th Cir.1999); Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1216 (11th Cir.1997); McNemar v. Disney Store, Inc., 91 F.3d 610, 616-17 (3d Cir.1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed.Cir.1996); and United States v. Garcia, 37 F.3d 1359, 1367 (9th Cir.1994). Judicial estoppel, however, is an affirmative defense, and this Court's standard of review when a summary judgment is based on an affirmative defense is well settled:
"This Court reviews de novo a trial court's [grant or] denial of a summary judgment. See Young v. La Quinta Inns, Inc., 682 So.2d 402, 403 (Ala.1996) (citing Hightower v. United States Fid. & Guar. Co., 527 So.2d 698 (Ala.1988)). Where, as in this case, the defendant moves for a summary judgment based on an affirmative defense, this Court applies the following standard of review:
"`When there is no genuine issue of material fact as to any element of an affirmative defense, . . . and it is shown that the defendant is entitled to a judgment as a matter of law, summary judgment is proper. If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate. Rule 56(c), Ala. R. Civ. P. In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant).'
"Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052, 1053 (Ala.1986)."
Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 444-45 (Ala.1999).

III. Judicial Estoppel and Lex Loci Delicti
Our review of the summary judgment in this case is based upon the principle of lex loci delicti, under which the courts of this state "will determine the substantive rights of an injured party according to the law of the state where the injury occurred." Fitts v. Minnesota Mining & Mfg. Co., 581 So.2d 819, 820 (Ala.1991). For 115 years, the principle of lex loci delicti has governed cases such as this one in Alabama courts. Fitts, 581 So.2d 819 (reaffirming the doctrine of lex loci delicti and declining to adopt the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971)); Alabama Great Southern R.R. v. Carroll, 97 Ala. 126, 11 So. 803 (1892). Although lex loci delicti governs substantive law, lex forithe law of the forumgoverns procedural matters.
*58 "`The distinction between "substance" and "procedure" has medieval origins: a court will apply foreign law only to the extent it deals with the substance of the case, i.e., affects the outcome of the litigation, but will rely on the forum law to deal with the "procedural" aspects of the litigation.'" Etheredge v. Genie Indus., Inc., 632 So.2d 1324, 1326-27 (Ala. 1994) (quoting Eugene F. Scoles & Peter Hay, Conflict of Laws 57 (1992)). In its order granting Caterpillar's summary-judgment motion, the trial court determined that the doctrine of judicial estoppel is procedural in nature and, thus, Alabama law applies in this case. On appeal, Middleton argues that the doctrine of judicial estoppel is substantive in nature and that the trial court therefore should have applied the laws of South Carolina relating to the doctrine of judicial estoppel.
"`The court before which the question arises is the one that has to decide whether any rule of law, domestic or foreign, will be characterized as substantive or as procedural for choice-of-law purposes.'" Etheredge, 632 So.2d at 1326 (quoting Robert A. Leflar et al., American Conflicts Law 333 (1986)). The question of whether the doctrine of judicial estoppel sounds in substantive or procedural law is one of first impression for this Court.
This Court has defined judicial estoppel in the following manner:
"`The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation."' Jinright v. Paulk, 758 So.2d 553, 555 (Ala.2000) (quoting Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So.2d 844, 846 (Ala.1992), quoting in turn Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988))."
Ex parte First Alabama Bank, 883 So.2d 1236, 1241 (Ala.2003). The United States Court of Appeals for the Seventh Circuit has described the doctrine of judicial estoppel as "a hybrid between substance and process that on occasion affects the outcome." Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1551 (7th Cir.1990).
"`The substance versus procedure issue arises in four contexts: (1) in application of the conflicts of laws rule that the procedural law of the forum must be applied; (2) in determining whether a retrospective criminal statute is substantive and, therefore, an invalid ex post facto law; (3) under the Erie Doctrine when a federal court is asked to apply a state law; and (4) when the power of a court or legislature to makes rules is in issue.'"
Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225, 247 (Ala.2004) (quoting Terry A. Moore, Does the Alabama Supreme Court Have the Power to Make Rules of Evidence?, 25 Cumb. L.Rev. 331, 346 n. 96 (1994-1995)).
The issue whether the doctrine of judicial estoppel is substantive or procedural in nature has arisen most often in cases where federal courts have applied state law under the Erie doctrine. However, no consensus exists among the federal circuits as to whether the doctrine of judicial estoppel should be considered substantive or procedural. Some circuits in diversity actions, in which federal procedural law and state substantive law are applied, have held judicial estoppel to be substantive: see, e.g., Original Appalachian Artworks, Inc. v. S. Diamond Assocs., 44 F.3d 925, *59 930 (11th Cir.1995) ("Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law."); Follette v. Wal-Mart Stores, Inc., 41 F.3d 1234, 1237 (8th Cir.1994) ("When a federal court is sitting in diversity, the preclusive effect of a prior judgment is determined by the preclusion rules of the forum which provided the substantive law underlying the prior judgment."); and Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 874 F.2d 1346, 1363 (10th Cir.1989) ("Inasmuch as the application of judicial estoppel in this diversity action goes to the adequacy of Tri-State's legal remedy, we look to the appropriate state law to determine whether judicial estoppel is recognized."). Other circuits have held that the doctrine of judicial estoppel is procedural in nature: see, e.g., Jarrard v. CDI Telecomms., Inc., 408 F.3d 905, 914 (7th Cir.2005) ("Although Jarrard's complaint was founded on diversity jurisdiction, we apply federal (not Indiana) caselaw with respect to judicial estoppel."); Johnson v. Oregon Dep't of Human Res., 141 F.3d 1361, 1364 (9th Cir.1998) ("Federal law governs the application of judicial estoppel in federal courts."); Pennycuff v. Fentress County Bd. of Educ., 404 F.3d 447, 452 (6th Cir. 2005) ("`Federal standards govern the application of judicial estoppel in federal court.'" (quoting Warda v. C.I.R., 15 F.3d 533, 538 (6th Cir.1994))); and Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n. 4 (4th Cir.1982) ("Although this is a diversity case, we consider that federal law controls the application of judicial estoppel, since it relates to protection of the integrity of the federal judicial process.").
The issue is so unclear that the United States Court of Appeals for the First Circuit has expressed relief when it has had the opportunity to pretermit the issue:
"There is a potential choice of law problem lurking in the interstices of this case. A federal court sitting in diversity jurisdiction is obliged to apply federal procedural law and state substantive law. . . . As judicial estoppel appears neither clearly procedural nor clearly substantive, there may be a legitimate question as to whether federal or state law . . . should supply the rule of decision.
"Having noted this question, we swiftly lay it to the side."
Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d at 32.
Although there is no consensus among the federal appellate courts as to whether the doctrine of judicial estoppel is substantive or procedural in nature, we find the argument that judicial estoppel is procedural in nature to be the more persuasive argument. The purpose of judicial estoppel is "`to protect the integrity of the judicial process' by `prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982), and United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.1993)). Simply stated, "judicial estoppel prevents parties from `playing "fast and loose with the courts,"'" New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808 (quoting Scarano v. Central R.R., 203 F.2d 510, 513 (3d Cir.1953), quoting in turn Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949)), and prevents "the system from being manipulated by `chameleonic litigants.'" Blanton v. Inco Alloys Int'l, Inc., 108 F.3d 104, 108 (6th Cir.1997). This Court has observed:
"`Judicial estoppel . . . strives to preserve the sanctity of the oath and protect the integrity of the judicial process. Reliance is not a factor because any *60 inconsistent statement violates the sanctity of the oath and injures the integrity of the judicial process, whether or not some party relied on the first statement. The inconsistency itself damages "public confidence in the purity . . . of judicial proceedings."'"
Ex parte First Alabama Bank, 883 So.2d at 1244 (quoting Rand G. Boyers, Precluding Inconsistent Statements: the Doctrine of Judicial Estoppel, 80 Nw. U.L.Rev. 1244, 1249-50 (1986)). Other courts have noted that "[j]udicial estoppel is a rule of procedure under which a party is estopped from taking a position contrary to that taken in prior proceedings." Heller v. Plave, 743 F.Supp. 1553, 1571 (S.D.Fla. 1990) (emphasis added); see also Oscar Mayer Foods Corp. v. ConAgra, Inc., (No. 94-1247, Dec. 22, 1994) (Fed.Cir.1994) (not reported in F.3d) ("Judicial estoppel is a procedural matter, reviewed under the law of the regional circuit in which the trial court sits." (emphasis added)).
Middleton argues that judicial estoppel is substantive in nature because, he says, it affects the outcome of the litigation in that its application would extinguish his right to pursue this litigation. However, this Court has noted:
"`[I]t is simplistic to assume that all law is divided neatly between "substance" and "procedure." A rule of procedure may have an impact upon the substantive result and be no less a rule of procedure on that account. . . . As said in Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16-17 (1965), "The line between `substance' and `procedure' shifts as the legal context changes. `Each implies different variables depending upon the particular problem for which it is used.'" . . . '"
Schoenvogel, 895 So.2d at 250 (quoting Busik v. Levine, 63 N.J. 351, 364-65, 307 A.2d 571, 578 (1973)). Although the doctrine of judicial estoppel had "an impact upon the substantive result" in Middleton's case, it is "no less a rule of procedure on that account." Schoenvogel, 895 So.2d at 250. The primary purpose of the doctrine of judicial estoppel is to protect the integrity of our judicial system from those who may play "`fast and loose with the courts.'" Consolidated Stores, Inc. v. Gargis, 686 So.2d 268, 276 (Ala.Civ.App.1996) (quoting Muellner v. Mars, Inc., 714 F.Supp. 351, 356 (N.D.Ill.1989)). Therefore, we conclude that judicial estoppel is procedural in nature, and the rule of lex fori shall apply. Thus, the trial court was correct to apply Alabama caselaw regarding the doctrine of judicial estoppel.

IV. Application of the Doctrine of Judicial Estoppel
Middleton argues on appeal that the trial court incorrectly applied the doctrine of judicial estoppel to his case because, he says, his failure to report on his Schedule B in his bankruptcy proceeding his claim against Caterpillar was unintentional and because, he says, his claim against Caterpillar was statutorily exempt from the bankruptcy estate under the laws of South Carolina. Although we do not agree with his reasoning, we agree that the trial court misapplied the doctrine of judicial estoppel, and its misapplication of the doctrine warrants reversal.
In Ex parte First Alabama Bank, this Court "embrace[d] the factors set forth in New Hampshire v. Maine[, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001),] and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel." 883 So.2d at 1246. As this Court stated:
"The [New Hampshire v. Maine] Court held that for judicial estoppel to apply (1) `a party's later position must be "clearly inconsistent" with its earlier position'; *61 (2) the party must have been successful in the prior proceeding so that `judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"' (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir.1982)); and (3) the party seeking to assert an inconsistent position must `derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' 532 U.S. at 750-51, 121 S.Ct. 1808. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel."
883 So.2d at 1244-45. However, this Court noted in Ex parte First Alabama Bank that "Jinright [v. Paulk, 758 So.2d 553 (Ala.2000)], with its discussion of the effect of an amendment to the ongoing bankruptcy plan and analysis of a detriment to the plaintiff and a windfall to the defendant as determinative factors, is not substantially different from considerations appropriate to factors (2) and (3) in New Hampshire v. Maine." 883 So.2d at 1245.
In Jinright v. Paulk, 758 So.2d 553 (Ala. 2000), Paulk's company applied a product known as "dryvit" to the exterior of the Jinrights' house during construction. The Jinrights experienced problems with the dryvit and entered into negotiations with Paulk and his company in April 1996 to repair the house. On June 27, 1996, the Jinrights filed a voluntary petition in bankruptcy under Chapter 13 of the United States Bankruptcy Code. The Jinrights did not disclose to the bankruptcy court their potential claim against Paulk, and in August 1996 the bankruptcy court approved their plan under Chapter 13. On November 7, 1996, the Jinrights sued Paulk, but the Jinrights did not disclose the existence of the lawsuit to their bankruptcy trustee until January 22, 1998. Paulk then moved for a summary judgment on the basis of judicial estoppel; the trial court granted the motion. In reversing the summary judgment, this Court observed the distinguishing features of the varying types of bankruptcies:
"`Chapter 13 is a hybrid of chapters 7 and 11. Chapter 13 is more like chapter 11 (the reorganization chapter used primarily by business debtors) than chapter 7 (the liquidation chapter of the Bankruptcy code). Chapter 13 is available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors' nonexempt assets or monitor ordinary course usage of assets. The trustee does not receive any of the debtors' earnings except what is paid to him or her as prescribed by the chapter 13 plan.
"`In chapter 11 cases, unless a trustee has been appointed by the court, there is no trustee. The debtor handles all of his or her own affairs. This includes use, sale or lease of all assets. In chapter 7, a trustee is automatically appointed in each case. The debtor relinquishes all authority over his or her nonexempt assets.
"`A chapter 7 trustee has one power which is specifically not given to a chapter 13 trustee. Under 11 U.S.C. § 704(l), a chapter 7 trustee "shall collect and reduce to money property of the estate." "Property of the estate" is all nonexempt assets in which the debtor had an interest before bankruptcy, such as a cause of action for a work related *62 injury. 11 U.S.C. § 541. This power therefore compels a chapter 7 trustee to take over all nonexempt lawsuits of the debtor.
"`In a chapter 13 case, unless otherwise specifically provided by the [debtor's] plan, a debtor remains in possession of all of his or her assets pre- and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee "collects (takes control of) and reduces to money" all nonexempt assets. . . . '"
Jinright, 758 So.2d at 556 (quoting In re Griner, 240 B.R. 432, 436 (Bankr.S.D.Ala. 1999)). The Jinright Court noted that a Chapter 13 plan may be amended at any time and may last for up to five years. Thus, at the time the Court issued its decision the Jinrights had not yet received a discharge in bankruptcy. Holding "that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estoppel," 758 So.2d at 559, this Court reasoned:
"The purpose of the doctrine of judicial estoppel will not be accomplished, but, rather will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of plaintiffs with valid claims. Paulk and Option Builders will receive a windfall if they are allowed to escape any potential liability to the Jinrights on the basis that the Jinrights failed to list their potential claim in their initial bankruptcy proceeding, even though the bankruptcy court and the trustee have now been fully informed about the lawsuit and the Jinrights' potential claim."
758 So.2d at 557.
This Court has previously affirmed summary judgments for noncreditor defendants based upon the debtor-plaintiffs' previous failure to list the action as an asset in the bankruptcy schedules. This Court first addressed the issue in Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917 (Ala.1993). In Luna, a discharged Chapter 7 debtor sued Dominion Bank 18 months after he was discharged, alleging breach of contract, fraud, and negligence, based on the bank's alleged failure to distribute loan proceeds to which he claimed he was entitled. Dominion Bank argued that Luna was judicially estopped from suing it because Luna had not disclosed to the bankruptcy court the claim against the bank as a potential asset. Luna argued that he was unaware of his claim against the bank until after he had been discharged from bankruptcy. This Court, however, held that if the facts were as Luna claimed, then Luna, as a reasonable person, should have known when he filed for bankruptcy protection that he had a claim against Dominion Bank. Luna, however, is distinguishable from this case because Luna brought claims against a creditor of his and related entities, and the claims were related to a prepetition claim held by the creditor, which was discharged in Luna's bankruptcy case before Luna filed his action in the state court. Furthermore, the bankruptcy court relied on Luna's schedules in granting him a discharge. The bankruptcy court was never made aware of Luna's claim against the creditor before granting the discharge.
This Court also upheld a summary judgment for a noncreditor-defendant in Bertrand v. Handley, 646 So.2d 16 (Ala.1994). In Bertrand a tenant sued, among others, her landlord for damages arising out of injuries sustained when she fell down an allegedly defective ramp. A default judgment was entered in favor of the tenant. Subsequently, the trial court set aside the *63 default judgment. During the intervening period between the granting and the setting aside of the default judgment, the tenant filed for bankruptcy protection but did not disclose as a potential asset to the bankruptcy court the default judgment against the landlord. The trial court subsequently entered a summary judgment in favor of the landlord. This Court affirmed the summary judgment, holding that "a debtor who does in fact know that a default judgment has been rendered in her favor and who does not disclose this fact in a bankruptcy proceeding is judicially estopped from pursuing the claim on which the judgment was based if the default judgment is later set aside." 646 So.2d at 19. However, Bertrand is also distinguishable from this case because the tenant in Bertrand filed her action before she filed for Chapter 7 bankruptcy protection, and the bankruptcy court discharged all the tenant's debts without ever knowing of the pending action against the landlord.
In the present case, Caterpillar failed to establish all three of the New Hampshire v. Maine elements of judicial estoppel. As established in Luna and Bertrand, a debtor-plaintiff's failure to disclose the existence of his civil action as a potential asset of the bankruptcy estate meets the inconsistent-positions element of judicial estoppel.[4] Here it is undisputed that Middleton did not amend his bankruptcy petition to disclose the existence of the underlying action until after Caterpillar's summary-judgment motion had been filed. Caterpillar, however, has failed to prove the second prong of the New Hampshire test, i.e., that Middleton was successful in the bankruptcy proceeding. As noted in Griner, a Chapter 13 debtor remains in possession of his assets during the pendency of his bankruptcy. In addition, the Chapter 13 bankruptcy petition can be amended at any time, and the bankruptcy plan can last up to five years. When Caterpillar filed its motion for a summary judgment, Middleton had not been discharged from his bankruptcy. Because the bankruptcy plan may be amended at any time, we conclude that Middleton was not successful in the prior proceeding so that the acceptance of an inconsistent position in a later proceeding "would create `the perception that either the first or second court was misled.'" Ex parte First Alabama Bank, 883 So.2d at 1244 (quoting New Hampshire v. Maine, 532 U.S. at 750, 121 S.Ct. 1808). Similarly, because Middleton's bankruptcy plan may be amended at any time, Middleton did not "`derive an unfair advantage or impose an unfair detriment on the opposing party,'" Ex parte First Alabama Bank, 883 So.2d at 1245 (quoting New Hampshire v. Maine, 532 U.S. at 751, 121 S.Ct. 1808), and thus failed to meet the third prong to the New Hampshire test.
As we noted in Ex parte First Alabama Bank, by adopting the New Hampshire test for the application of judicial estoppel, this Court did not abandon the concerns that a detriment may be imposed on a plaintiff with a potentially meritorious claim and that a defendant may receive an unwarranted windfall by the application of the doctrine of judicial estoppel. Should *64 this Court permit the trial court's ruling to stand, Caterpillar would be the undeserving recipient of an unwarranted windfall, i.e., the dismissal of Middleton's potentially meritorious claim. Such a result would thwart the goals of our justice system.
In reversing the trial court's judgment, this Court in no way condones Middleton's delay in amending his bankruptcy petition to notify the bankruptcy court of his potential claim against Caterpillar. The Bankruptcy Court for the District of South Carolina, the court in which Middleton filed his bankruptcy petition, has noted the responsibility of a debtor to promptly file with that court accurate petitions and amendments:
"The Bankruptcy Code provides that Debtors' foremost responsibility is to cooperate with the Court and the Trustee and to facilitate the accurate and proper performance of their duties. See 11 U.S.C. § 521. Since bankruptcy schedules and statements are carefully designed to elicit certain information necessary for the proper administration of cases, Debtors[ ] have a duty to complete these documents thoughtfully and thoroughly. See In re Phillips, C/A No. 02-10461, slip op. at 4 (Bankr.D.S.C. Feb. 21, 2003). Furthermore, accuracy, honesty, and full disclosure are critical to the functioning of a bankruptcy and are inherent in the bargain for a debtor's discharge. See id. at 3 (citing Kestell v. Kestell, 99 F.3d 146, 149 (4th Cir.1996)). Therefore, debtors are responsible for disclosing an accurate and complete schedule of assets with proper values and a truthful statement of affairs in order to convey a complete and accurate portrayal of their financial situation. See id. at 3 ('Debtors bear the burden of proving that their Plan meets the confirmation requirements of § 1325(a), and part of this burden includes proving that the values used in their Plan are adequate'); Siegel v. Weldon (In re Weldon), 184 B.R. 710, 715 (Bankr.D.S.C.1995) ('The critical time for disclosure is at the time of the filing of a petition and the Debtor has the responsibility to do so. Bankruptcy law requires debtors to be honest and to take seriously the obligation to disclose all matters.'). Furthermore, there is no allowance for selectivity in asset disclosure. Id. ('To allow the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system.')."
In re Simpson, 306 B.R. 793, 797-98 (Bankr.D.S.C.2003).
Because Caterpillar did not meet its burden in proving the elements of judicial estoppel as set forth in New Hampshire v. Maine, as developed in Ex parte First Alabama Bank, supra, the trial court erred in entering the summary judgment.

V. Assumption of Risk
After the trial court entered the summary judgment, Middleton filed a motion to alter, amend, or vacate the judgment. Caterpillar then filed a motion in response, arguing that the evidence in the record "strongly supports summary judgment for Caterpillar based on the doctrine of assumption of the risk." In its order denying Middleton's motion to alter, amend, or vacate the trial court stated that summary judgment was proper not only on the basis of the doctrine of judicial estoppel, but also on the basis of the doctrine of assumption of risk. The trial court stated: "Quite simply, [Middleton's] own testimony, which is undisputed, establishes that he freely and voluntarily exposed himself to a known danger which he understood and appreciated." On appeal, Middleton argues that the trial court erred in finding that summary judgment was proper on assumption-of-the-risk *65 grounds because, he argues, the issue was not properly before the trial court. Further, he argues that South Carolina caselaw precluded a summary judgment based on the doctrine of assumption of the risk.
Middleton is correct; this court need not reach the merits of the assumption-of-the-risk defense because the issue was not properly before the trial court. A motion to alter, amend, or vacate judgment or a response to such a motion is not a proper vehicle for presenting a new ground on which to base a summary judgment. See generally Rules 56 and 59(e), Ala. R. Civ. P. Thus, the merits of the assumption-of-the-risk defense were never properly before the trial court; we therefore do not consider this issue.

VI. Conclusion
The trial court erred in entering a summary judgment for Caterpillar because Caterpillar failed to meet the necessary burden of establishing the applicability of the doctrine of judicial estoppel as set forth in New Hampshire v. Maine, as adopted by Ex parte First Alabama Bank, and because the issue of the assumption-of-the-risk defense was never properly before the trial court. Therefore, the summary judgment in favor of Caterpillar is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, WOODALL, STUART, BOLIN, and MURDOCK, JJ., concur.
SMITH and PARKER, JJ., concur in the result.
PARKER, Justice (concurring in the result).
I agree with the majority's conclusion that the trial court's summary judgment in favor of Caterpillar should be reversed and the case remanded because the trial court erred in holding that Middleton was judicially estopped from pursuing his action against Caterpillar. I, however, believe that the proper standard when reviewing a trial court's application of the doctrine of judicial estoppel should be an exceeding-discretion standard, rather than a de novo standard, even when the issue of judicial estoppel is raised on appeal from a summary judgment.
The respective inquiries involved in a ruling based on judicial estoppel, on the one hand, and a summary judgment, on the other, are quite different and therefore invoke different standards of review. Judicial estoppel requires that the trial court make factual determinations. Judicial estoppel asks whether a party has given factually inconsistent testimony under oath in a prior proceeding and has intentionally misled the court to gain an unfair advantage. "Whether [a plaintiff] knew or should have known about causes of action that should be disclosed as assets in bankruptcy proceedings are questions of fact to be decided by the trier of fact." Nollie v. Jim Wilson & Assocs., Inc., 781 So.2d 962, 968 (Ala.Civ.App.2000).
Although the application of judicial estoppel turns primarily on the particular facts, not legal issues, a trial court is precluded from making factual determinations in deciding whether to enter a summary judgment. A summary judgment that is premised on factual findings by the trial court is defective, even in a nonjury case. It is not within the trial court's prerogative to find facts on a motion for a summary judgment. Ufford v. American Indem. Co., 631 So.2d 959 (Ala.1994). The grant or denial of a motion for summary judgment raises a legal question and, therefore, a de novo standard of review applies.
*66 Judicial estoppel is an equitable doctrine invoked by a court at its discretion. New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The trial court determines whether the party against whom judicial estoppel is being asserted has intentionally attempted to mislead the court to gain an unfair advantage, and it does not apply the doctrine of judicial estoppel when the party's inconsistent position in the subsequent litigation resulted from mere inadvertence or mistake. John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir. 1995). Even when a debtor has failed to amend her bankruptcy schedules to disclose an action of which she learned before the confirmation of her debt-adjustment plan, the district court has held that the appropriate remedy is not an order dismissing the action brought by the debtor on judicial-estoppel grounds, but an order barring the debtor from personally benefiting from the pursuit of those claims. The court, therefore, required the debtor to recover all damages in the adversary action and to distribute all damages recovered among the creditors of her estate. Autos, Inc. v. Gowin, 330 B.R. 788 (D.Kan. 2005). In determining whether to apply the doctrine of judicial estoppel, the trial court exercises its broad discretion, considering all the relevant facts and circumstances of each case and weighing equity matters involved in a specific case.
Such discretion in the trial court should be respected by an appellate court, because the trial court is in a better position to determine whether a litigant is "playing `fast and loose' with the courts." New Hampshire v. Maine, 532 U.S. at 750, 121 S.Ct. 1808. Trial court judges have intimate knowledge of a given case and can observe the parties and lawyers and their litigation strategies. Therefore, the United States Supreme Court has noted that trial courts are more adept than are appellate courts at fact-finding, supervising litigation, and applying fact-dependent legal standards. Salve Regina Coll. v. Russell, 499 U.S. 225, 233, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
A survey of opinions from other jurisdictions indicates that Alabama would join the mainstream of American jurisprudence in adopting an exceeding-discretion standard in matters involving judicial estoppel. See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31-32 (1st Cir. 2004); Jaffe v. Accredited Sur. & Cas. Co., 294 F.3d 584, 595 n. 7 (4th Cir.2002); Coastal Plains, Inc. v. Mims, 179 F.3d 197, 205 (5th Cir.1999); Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1216 (11th Cir.1997); Blanton v. Inco Alloys Int'l, Inc., 108 F.3d 104, 108 (6th Cir.1997); McNemar v. Disney Store, Inc., 91 F.3d 610, 616-17 (3d Cir.1996); United States v. Garcia, 37 F.3d 1359, 1367 (9th Cir.1994); In re Cassidy, 892 F.2d 637, 642 (7th Cir.1990); Evenson v. Athena Assurance Co., 111 Wash.App. 1033 (2002) (unpublished opinion); Bidani v. Lewis, 285 Ill.App.3d 545, 549-50, 675 N.E.2d 647, 650-51, 221 Ill.Dec. 452, 455-56 (1996); Ceres Terminals, Inc. v. Chicago City Bank & Trust Co., 259 Ill.App.3d 836, 851-52, 635 N.E.2d 485, 496, 200 Ill.Dec. 146, 157 (1994); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 780 (9th Cir. 2001); Ahrens v. Perot Sys. Corp., 205 F.3d 831, 833 (5th Cir.2000); Meronk v. Arter & Hadden, LLP (In re Meronk), 249 B.R. 208, 212 (9th Cir.BAP2000); Anjelino v. New York Times Co., 200 F.3d 73, 100 (3d Cir.1999); and Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed.Cir. 1996). The California state courts apply a "substantial evidence" test to a trial court's ruling based on judicial estoppel, see International Engine Parts, Inc. v. Feddersen & Co. 64 Cal.App.4th 345, 354, 75 Cal. Rptr.2d 178 (1998); however, there is no *67 meaningful difference between a substantial-evidence test and an exceeding-discretion test in this context. See Pack v. Kings County Human Servs. Agency, 89 Cal.App.4th 821, 838, 107 Cal.Rptr.2d 594 (2001) (explaining the difference between substantial evidence and abuse of discretion in the California courts).
Many, though not all, courts in other jurisdictions, have ruled that the fact that the case arises in the summary-judgment context does not affect the decision to review the trial court's determination to see whether the trial court exceeded its discretion. For example, in Whitacre Partnership v. Biosignia, Inc., 358 N.C. 1, 591 S.E.2d 870 (2004), the Supreme Court of North Carolina held that the exceeding-discretion standard of review should apply, even when judicial estoppel is the basis for a summary judgment:
"We note that a trial court's application of judicial estoppel is reviewed for abuse of discretion. See New Hampshire [v. Maine], 532 U.S. [742] at 750, 121 S.Ct. [1808] at 1814-15, 149 L.Ed.2d [968] at 977-78 [ (2001) ] (`[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion.'); see also Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir.2001); Taylor v. Food World, 133 F.3d 1419, 1422 (11th Cir.1998); McNemar v. Disney Store, 91 F.3d 610, 616-17 (3d Cir. 1996), cert. denied, 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997), overruled on other grounds by Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); State v. Taylor, 128 N.C.App. [394] at 400, 496 S.E.2d [811] at 815-15 [ (1998) ]. Moreover, as the Court of Appeals properly recognized, `[w]hen an action pled is barred by a legal impediment, such as judicial estoppel, there are no triable issues of fact as a matter of law.' Whitacre P'ship, 153 N.C.App. [608] at 614, 574 S.E.2d [475] at 479 [ (2002) ] (citing Andrews v. Davenport, 84 N.C.App. 675, 677, 353 S.E.2d 671, 673 (1987), disc. review denied, 319 N.C. 671, 356 S.E.2d 774 (1987)). Thus, when a trial court has acted within its discretion in applying judicial estoppel, leaving no triable issues of material fact, summary judgment is appropriate. See Montrose [Med. Group Participating Sav. Plan v. Bulger], 243 F.3d [773] at 779 [ (2001) ] ('Summary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case.'); West Delta Oil Co. v. Hof, [(No. CIV. A 01-1163, August 21, 2002) ] (E.D.La.2002) [ (not published in F.Supp.2d)] (application of judicial estoppel in context of summary judgment motion is reviewed for abuse of discretion); cf. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43, 118 S.Ct. 512, 517, 139 L.Ed.2d 508, 516 (1997) (rejecting argument that ruling of admissibility of expert testimony should be reviewed de novo simply because it arose in the `outcome determinative' context of a summary judgment motion, and instead reviewing for abuse of discretion)."
358 N.C. at 38-39, 591 S.E.2d 870 at 894-95.
I therefore believe that this Court should employ an exceeding-discretion standard when reviewing the trial court's application of judicial estoppel. Consequently, I differ on the standard of review applied in the majority opinion, but I concur fully in the result reached.
NOTES
[1] This case was originally assigned to another Justice on this Court; it was reassigned to Chief Justice Cobb on January 16, 2007.
[2] Middleton's complaint also named Caterpillar, Inc., Thompson Tractor Company, Inc., and Ryan-Walsh, Inc., n/k/a Stevedoring Services of America Gulf Terminals, Inc., as defendants. During the course of the litigation, Caterpillar, Inc., Thompson Tractor Company, Inc., and Ryan-Walsh, Inc., were dismissed on the joint motions of Middleton and each respective defendant.
[3] SSA was subsequently dismissed. See note 2, supra.
[4] After Caterpillar filed its motion for a summary judgment, Middleton amended his bankruptcy petition to include as an asset his action against Caterpillar. However, it is apparent from the record that Middleton amended his bankruptcy petition to disclose the action only in response to Caterpillar's summary-judgment motion asserting judicial estoppel. As discussed previously, the record shows at least four prior instances in which Middleton failed to disclose his potential claim against Caterpillar in his bankruptcy petitions under circumstances that support the inference that the omission was not inadvertent.